No. 34,810

Thomas D. Hampson, Administrator of the Estate of L. D. Wright, Deceased, *Appellant,* v. Percy F. Stanfield, *Appellee.*

(103 P. 2d 910)

Opinion filed July 6, 1940.

*D. J. Sheedy* and *J. R. Sheedy,* both of Fredonia, for the appellant; *T. D. Hampson,* of Fredonia, of counsel.

*E. E. Lamb* and *W. E. Hogueland,* both of Yates Center, for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was an action by an administrator to recover possession of certain personal property alleged to belong to the decedent's estate.

L. D. Wright was a single man and at the date of his death in 1938 his next of kin were his sister, Sadie M. Stanfield, and his half sister, Cora A. Childs. The defendant, Percy F. Stanfield,

was the son of Sadie Stanfield. Shortly after his discharge from the army in 1919, he made his home with his uncle, L. D. Wright, who owned a large farm located in Woodson and Wilson counties. The relations between the two men were harmonious. Although it is not clearly shown in the record, about July 29, 1936, L. D. Wright conveyed all of his real estate to Percy F. Stanfield. On that date he executed and delivered to Percy F. Stanfield the following document:

"For value received, and love and affection, I hereby sell, transfer and set over to Percy F. Stanfield all my livestock, consisting of horses, cattle, mules, hogs, to have and to own forever and all farm machinery, utensils, all household goods, chickens and everything now used upon my farm upon the express condition, however, that when any of the personal property is sold that the money shall be deposited in The First National Bank of Toronto, Kansas, and the same may be reinvested in stock to be placed on the farm, but all not reinvested in stock shall remain in said bank for the use and benefit of the undersigned and shall be used if necessary for his care and support during his life, and any sum remaining after his death shall be the property of the said Percy F. Stanfield.

"It is further ordered that any sum of money that I may have on deposit in The First National Bank of Toronto, Kansas, shall be used to pay the expense of my last sickness and funeral expense, and said Percy F. Stanfield is authorized to draw the same for said purpose.

"Witness my hand this 29th day of July, 1936.  L. D. Wright.

"Witnesses:

"C. N. Cannon.

"Mary Cannon."

L. D. Wright died intestate on May 12, 1938, and on that date the balance in the account in the First National Bank of Toronto was $2,341.21. On July 24, 1936, his balance had been $1,273.91. On June 2, 1938, the sisters, Sadie M. Stanfield and Cora A. Childs, executed and delivered to Percy F. Stanfield the following document:

"To the First National Bank of Toronto, Kansas:—

"We, the undersigned, being the only heirs of L. D. Wright, deceased, do hereby authorize you to pay to Percy F. Stanfield all moneys deposited in said bank in the name of L. D. Wright in accordance with the request of the said L. D. Wright made on the 29th day of July, 1936, when he executed an instrument turning said money over to said Percy F. Stanfield.

"Dated this 2d day of June, 1938.  Sadie M. Stanfield,

"Cora A. Childs."

And on the same date the balance in the account was delivered to Percy F. Stanfield. On September 19, 1938, Thos. D. Hampson was appointed administrator of the estate of L. D. Wright and

duly qualified. He returned into probate court an inventory listing all of the livestock and personal property on the farm, appraised at $5,403, and the balance in the bank of $2,341.21, and thereafter made demand on Percy F. Stanfield for delivery and possession, which was refused, and he then instituted the present action.

Briefly stated, the petition alleged appointment of the administrator and that at the time of his death L. D. Wright was the owner of the property sought to be recovered. In his answer the defendant made many admissions now not necessary to state, and alleged that he was the owner of the personal property by virtue of the contract of July 29, 1936, above quoted.

At the trial, there was a showing as to the length of time Percy F. Stansfield had lived with his uncle; that he had $500 in cash when he came there and used part of it to buy an automobile which was used in connection with the farm operations, the remainder being used about the place; that he had received a bonus of $1,575 on account of his military service, part of which was used to buy cattle and part of which was used to pay expenses; that he worked on the farm steadily, receiving no wages but only spending money; that until 1928 or 1929 a maiden aunt had lived there, but after her death he did the housework along with his other work. Some of the circumstances surrounding the execution of the contract were shown, and that after its execution and delivery Percy F. Stanfield went into possession of all the personal property and handled it, making deposit of such moneys as were received in the account of L. D. Wright in the First National Bank of Toronto. There was also some evidence that after the contract was made, L. D. Wright stated to third persons that all of the property belonged to Percy F. Stanfield, as well as some evidence from which it might be inferred L. D. Wright was still exercising rights of ownership. The rights of the parties, however, are to be determined largely from an interpretation of the contract, and we shall not discuss the details of the evidence further. The trial court, after hearing the evidence and considering it and the contract and order above quoted, determined the issues in favor of the defendant, and the plaintiff appeals.

Six specifications of error pertain to alleged errors in ruling on admission of evidence. Three of these pertain to permitting the president of the First National Bank in Toronto to testify with respect to the fact that subsequent to the death of L. D. Wright on May 12, 1938, Percy F. Stanfield presented to the bank the order

of June 2, 1938, signed by his mother and aunt, and that the balance on hand was delivered to Percy F. Standfield. Objection is also made that the order itself was admitted. We have examined the record and are of the opinion the evidence adduced was within the issues and was properly received in evidence. Complaint is also made that the appraisers of the claimed assets of the estate of L. D. Wright were permitted to testify that when the administrator took them out to the farm to perform their duties the administrator asked Percy F. Stanfield to show them the property, and he claimed it belonged to him. It is said the evidence was self-serving and inadmissible. It has been held, however, that declarations of persons in possession of real or personal property which illustrate the character of their possession and explain their claims of ownership are admissible in evidence. (See *Hubbard v. Cheney,* 76 Kan. 222, 226, 91 Pac. 793.) Under that rule, the evidence was admissible. The other complaint is that a witness was permitted to state that L. D. Wright sold some cattle to Percy F. Stanfield, the objection being it was not within the pleadings. Perhaps so, but that it affected the result in any particular is not even claimed. The error, if any, will not be considered.

Another specification is that the trial court erred in denying plaintiff's motion for judgment on the pleadings. There was no error in that particular unless the trial court erred in its final conclusion and in denying plaintiff's motion for a new trial, both of which rulings are specified as erroneous.

We turn our attention to the contract of July 29, 1936. Our attention is directed to various authorities pertaining to the law of gifts, but we shall not discuss them, for it is clear there was no gift. The contract is in two divisions. The first is in the nature of a bill of sale, and is executed for value, and that portion prior to the phrase "upon the express condition" provides for an immediate transfer of possession. Not only does the language so provide, but the evidence shows delivery of the instrument by the maker to Percy F. Stanfield. Under *Fontron Loan & Trust Co. v. Korzuskiewicz,* 125 Kan. 725, 266 Pac. 649, it would appear that possession would pass on delivery of the instrument even though there was no actual delivery of the property described. More than that, the evidence shows Percy F. Stanfield went into actual possession. Under the test laid down in *Imthurn v. Martin,* 150 Kan. 906, 96 P. 2d 860, the instrument was a bill of sale of the personal property described.

The sale was on condition that the proceeds be reinvested in livestock to be placed on the farm, or if not so reinvested, to be deposited in the named bank and used, if necessary, for the support of the maker. The maker reserved no power of revocation of any character, nor of the power to make the reinvestment, nor otherwise save that any moneys in the bank should be used for his support, if necessary. It might be said he had created an irrevocable trust for his own benefit.

Taking up the second paragraph of the contract, it will be noted that a grammatical construction of it would lead to a conclusion the maker was referring to the amount of his deposit in the bank on July 29, 1936, and not to moneys thereafter deposited, and such a construction is entirely consistent, for in the first paragraph he does not pretend to transfer to Percy F. Stanfield any moneys except those thereafter deposited. But whether we adhere to such a construction or construe the paragraph to refer to deposits thereafter made is not important now, for after the death of L. D. Wright his two sisters, who were his only heirs, directed the bank to pay the balance on hand to Percy F. Stanfield and that was done; he paid the expenses of the last sickness and funeral of L. D. Wright, and the wish expressed was fully performed. Even if it be held the second paragraph was testamentary and being properly executed could have been admitted as a will, that was not done. Even so, it was still good as a contract, and if not inequitable could be enforced. (See *Imthurn v. Martin,* supra, and cases cited.) At the time the application for appointment of an administrator was filed, the entire contract had been performed. It would seem that under *Harrod v. McComas,* 78 Kan. 407, 96 Pac. 484, the administrator had no cause of action. And finally, it appears that at the time of his death, the only property that could be said to belong to L. D. Wright was the balance in the bank, and his only heirs at law were his sisters. They directed the bank to pay the money to Percy F. Stanfield, and it did so, and he thereupon paid the expenses of the last illness and of the funeral. There were no other debts. No creditor could complain and the only persons who could inherit authorized the payment of the only assets to Percy F. Stanfield. The evidence discloses there was no occasion for the appointment of an administrator, and under *Richards v. Tiernan,* 150 Kan. 116, 91 P. 2d 22, he may not maintain the present action.

We conclude the judgment of the trial court was correct and it is affirmed.

ALLEN, J. (concurring specially): In the brief of appellee it is stated: "There are no intricate questions of law involved in the case and very few questions of fact." The writer has found the question of law a perplexing one. Did the transferee, Stanfield, take the beneficial interest in the property subject to an equitable charge, or was a trust created?

More than a century ago Lord Eldon, in *King v. Denison*, 1 Ves. and B. 260, was troubled with the same question, and stated the distinction between a trust and an equitable charge:

". . . I will here point out the nicety of distinction, as it appears to me, upon which this court has gone. If I give to A and his heirs all my real estate, charged with my debts, that is a devise to him for a particular purpose, but not for that purpose only. If the devise is upon trust to pay my debts, that is a devise for a particular purpose, and nothing more; and the effect of those two modes admits just this difference. The former is a devise of an estate of inheritance for the purpose of giving the devisee the beneficial interest, subject to a particular purpose: the latter is a devise for a particular purpose; with no intention to give him any beneficial interest. Where, therefore, the whole legal interest is given for the purpose of satisfying trusts expressed, and those trusts do not in their execution exhaust the whole, so much of the beneficial interest as is not exhausted belongs to the heir: but, where the whole legal interest is given for a particular purpose, with an intention to give to the devisee of the legal estate the beneficial interest, if the whole is not exhausted by that particular purpose, the surplus goes to the devisee; as it is intended to be given to him. . . .

"There is a great difference here between a devise upon trust and a devise subject to a charge: but the object is affected much in the same way; compelling the party to make good the charge, or trust, by very similar operations, as applied in this court." (pp. 272, 276.)

In *Downer v. Church*, 44 N. Y. 647, the testator died leaving a widow, but no child. By his will he "devised all his property to Church, charging it with the support and maintenance of his widow during her life." The court stated:

". . . The provision of the will, as stated in the case, is that the property is devised to Loren Church, subject to the support and maintenance of the widow. This language does not create a trust, it creates an encumbrance. The title to the property devised is vested in Church, charged with the support of the widow, as an encumbrance. There is no difficulty in his conveying such title as he has. The plaintiff takes it subject to the charge contained in the instrument creating the title in the defendant. . . ." (p. 651.)

In *Morton v. Flanagan*, 143 Kan. 413, 55 P. 2d 373, the testatrix died leaving no children, but left sisters. In her will she asked that her friend, Mrs. Flanagan, be appointed executrix. She directed that her debts and certain legacies be paid. The will stated: "Mrs. Lillian Flanagan is to have the distributing of this to be held as her own."

Did Mrs. Flanagan take the property subject to a charge or encumbrance? If so, she had the beneficial ownership, but the property was security for the payment of the debts and legacies.

Did the instrument create a trust? If so, the express trust was for the purpose of paying the debts and legacies. As these items did not exhaust the property, what disposition was to be made of the surplus? Ordinarily it would go by way of resulting trust to the heirs of the testator, but if the intention was clear it could be retained by the trustee. This is illustrated by the following case.

In *In re Foord* (1922), 2 Ch. 519, the testator, after the payment of certain legacies, by his will provided:

". . . All my effects including rubber and all other shares I leave absolutely to my sister Margaret Juliet on trust to pay to my wife per annum (three hundred pounds) with income tax, 100 l (one hundred pounds) to be free of income tax." (p. 519.)

The estate was more than sufficient to pay the wife's annuity. The court stated:

"This is a difficult case and on the border line. The question is whether the gift to the testator's sister is a gift merely for the particular purpose of providing an annuity for the testator's wife, in which case there is a resulting trust of the balance of the estate for the testator's next of kin, or is not merely for that purpose, and as regards any balance belongs to the testator's sister beneficially." (p. 526.)

The court gave the balance of the property to the trustee. The trust did not exhaust the property, but the court found that the resulting trust that would usually arise was rebutted. The intention was clear that the trustee was to have the residue.

In *Woodbury v. Hayden*, 211 Mass. 202, 97 N. E. 776, the testatrix, after directing the payment of debts, etc., by her will, provided:

". . . The balance of my estate, both real and personal, I bequeath to Joseph O. Hayden, of Somerville county and state aforesaid. The same to be used as far as necessary for the support and maintenance of my Aunt Almira Augusta Woodbury of Cambridge county and state aforesaid. . . ." (p. 205.)

When the testatrix was three years of age her mother died and she was cared for by her aunt, Mrs. Woodbury. Her father had married

again and for many years had lived in another state. The father had not supported the testatrix after she was ten years of age. Joseph O. Hayden, devisee in the will, was treasurer of the county, and testatrix had worked for him.

Did the will create a trust or an equitable charge? The court stated:

". . . Was it her intent simply to provide for her aunt, then seventy-two years of age, so far as the property should be needed for that purpose, or was it her intent to give all she had to Mr. Hayden subject only to the needs of her aunt? The question, although narrow, is close and difficult. Without reciting the considerations urged by the respective counsel it is sufficient to say that the arguments appear very evenly balanced, and whichever direction is taken the path is not entirely smooth." (p. 205.)

The court held the instrument was a trust. Hayden took the property for the particular purpose only, and the surplus went by way of resulting trust to the heirs of the testatrix.

In *Crowley v. Nixon*, 127 Kan. 178, 272 Pac. 104, a testator devised land to his son, but directed that the son pay certain sums within two years to the testator's daughters. From the language of the will, the court held the son took the property upon condition. Ordinarily such arrangements are held to create an equitable charge.

For the distinctions between these various legal relationships, see Restatement of Trusts—as to a trust and an equitable charge, section 10; trust and condition, section 11; resulting trust, section 430. Where the express trust is fully performed without exhausting the trust estate, and the trustee is to keep the surplus, see section 431. I am inclined to think that Stanfield took the property in the first paragraph of the instrument as trustee of an express trust, and that the surplus, after performance of the trust, belonged to him.

The money in the bank mentioned in the second paragraph of the instrument was to be used by Stanfield to pay the expense of the last sickness and funeral expenses. Assuming the title to the money passed presently to Stanfield, it was an express trust for the purposes mentioned, and when such expenses were paid, the balance passed by way of resulting trust to the heirs of the settlor. Clearly he was not entitled to the residue.