36,484

In the Matter of the Estate of John Wenzel, Deceased. (LELA E. WENZEL, *Appellant*, v. WHEELER-KELLY-HAGNY TRUST COMPANY, Executor, *Appellee.*)

(170 P. 2d 618)

Opinion filed July 6, 1946.

*Austin M. Cowan,* of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson,* both of Wichita, *Ruby Turner Looper* and *Kittie C. Sturdevant,* both of Oklahoma City, Okla., were on the briefs for the appellant.

*W. D. Jochems,* of Wichita, argued the cause, and *J. Wirth Sargent, Roetzel Jochems* and *Robert G. Braden,* all of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This appeal involves litigation between decedent's widow and the executor of his estate. Judgment was entered in the

probate court in some particulars in favor of the executor and in others in favor of the widow. Both appealed to the district court. Judgment was entered in the district court in favor of the executor. The widow has appealed. Many of the facts are admitted.

John Wenzel and Lela Wenzel were married February 5, 1932. At the time they were married John had conveyed all of his assets to a trust company. The trust deed provided, amongst other things, in the event of John's death, leaving a wife surviving him, for a payment to her of $10,000 or at her option for a payment to her of $100 a month for life or until she should remarry.

On February 2, 1932, three days before they were married John and Lela executed a contract. It provided, amongst other things, for the payment to Lela, provided she should survive John, of $10,000 within a year after John's death or at her option $100 a month for life or until she should remarry, and this payment should be in lieu of any claim to any of John's property to which she might become entitled as his wife but for the contract.

In October, 1938, Lela sued John for divorce. In May, 1939, a divorce was granted to her and she was given alimony in the amount of $7,500. In July of 1939, on application of John, a new trial was granted. On July 24, 1939, Lela and John decided to try life together again, whereupon they entered into another contract. This contract revoked the former one, provided for dismissal of the divorce action, gave Lela the right to dispose of her separate property, and provided that John would immediately take steps to provide, in the event Lela should survive him as his widow, for the payment to her out of his estate of one-half its net appraised value but not to exceed $10,000 and for the payment to her of $100 a month until the $10,000 should be paid. The contract provided further that she was to receive the household furnishings of their living quarters. Lela agreed to accept the above sum in full settlement of all claims she might have against John's estate on account of being his widow.

On November 27, 1939, John made his will. It bequeathed to Lela the household furnishings in their living quarters and in addition $10,000 cash, and provided that if this sum could not be paid within thirty days after his death, then the executor was to pay her $100 a month until the $10,000 should be paid. On March 7, 1940, Lela executed her consent to the will. It is as follows:

"That I, Lela E. Wenzel, do hereby consent that my husband, John Wenzel, may devise and bequeath all his property in the manner set out in his will

dated November 27th, 1939, executed in the presence of Hazel M. Jones and Emmet A. Blaes, to which will this consent is attached.

"I do further state that I have read the above and foregoing will and have had its provisions explained to me and I agree to accept the provisions made in the foregoing will for me, to the exclusion of any rights I may have under the laws of the State of Kansas."

On March 4, 1942, John died. On March 7, 1942, Lela signed a petition for the probate of the will. The petition contained the following statement:

"Attached thereto is also the consent of this petitioner (widow) to the said Last Will and Testament, dated the 7th day of March, 1940, and executed by same attesting witnesses."

The prayer of the petition read:

"Wherefore, this petitioner (widow) prays that said Last Will and Testament be admitted to record and to probate and that Letters Testamentary issue to the said The Wheeler Kelly Hagny Trust Company."

The will was admitted to probate on March 17, 1942, and letters testamentary were issued to the appellee.

On September 15, 1942, Lela filed a petition to require the executor to pay her $10,000 without a final receipt. In this petition she referred to the will, stated that the executor had been paying her $100 a month and had offered to pay her $10,000 as a beneficiary under it, if she would sign a receipt releasing it from any further payments, and that the $10,000 was due her as a beneficiary and she should not be required to sign a receipt in full until it could be determined, if determined it should be, that such sum was in full payment.

On September 23, 1942, the probate court made an order allowing this petition. The executor appealed from that order. This appeal was never heard.

On December 10, 1942, Lela filed a motion asking the probate court to set aside her homestead to her. That motion was in the following language:

"Comes now Lela E. Wenzel, the surviving widow and sole heir-at-law of John Wenzel, deceased, and moves the court to require the Executor to set aside to Lela E. Wenzel, as such widow, the apartment building in which the applicant is now residing as her homestead and exempt property under and by virtue of the laws of the State of Kansas and states that she and the said John Wenzel were living therein at the time of his death and that she has continued to reside therein during the time since his death and your applicant further moves the court to require the Executor, The Wheeler, Kelly & Hagny Trust Company, to make an accounting for all rents obtained from the said

apartment building and to pay the same to this applicant as exempt income from and since the time of the death of the said John Wenzel."

It should be stated here that John's estate was considerably in excess of $20,000 and at the time of his death he and Lela were living in one of the apartments of an apartment house that was a part of his estate.

This motion was set for hearing and continued from time to time.

On March 5, 1943, all the parties entered into a stipulation, which reads as follows:

"1. There are now pending certain proceedings in controversies between these parties designated as follows:

'In the matter of the estate of John Wenzel, deceased, appeal from the Probate Court, pending in Division No. 3 of the District Court of Sedgwick County, Kansas, Case No. A-6949.

'The Wheeler Kelly Hagny Trust Company, executor, vs. Lela E. Wenzel, pending in the district court of Sedgwick County, Kansas, Division No. 2 Case No. A-7037.

'In the Matter of the estate of John Wenzel, deceased, pending in the probate court of Sedgwick County, Kansas, Case No. 20745 certain motions filed on behalf of the said Lela E. Wenzel for the purpose of having a homestead set aside to her and for the purpose of removing the said executor.'

"2. It is stipulated and agreed that the executor shall, at the earliest convenience, undertake proceedings in the Probate Court for final settlement of the said estate, including the filing of a final report, petition for discharge, and other proceedings proper under the probate law of the State of Kansas. In connection with the said proceedings for final settlement, the said motion to set aside a homestead to said Lela E. Wenzel shall be submitted to the Probate Court to be heard and determined. It is further stipulated and agreed that the balance of the said pending proceedings listed above shall be dismissed and withdrawn without prejudice to the rights of the parties, and that all matters in controversy between the parties shall be submitted to the Probate Court in connection with the said proceedings for final settlement, it being distinctly stipulated and agreed that the dismissal and withdrawal of the said pending proceedings shall not be deemed to be an admission against the interests of either party and shall not be an adjudication of any issue or controversy whatsoever involved in the same.

"3. It is further stipulated and agreed that the executor shall forthwith pay to Lela E. Wenzel the sum of six hundred dollars ($600.00) and shall further pay the sum of one hundred dollars ($100.00) on the first day of April, 1943, and a like sum on the first day of each month thereafter until the order of final settlement is entered in the said probate proceedings, it being agreed that all such sums shall apply as credits on the bequest of Lela E. Wenzel, in the last will and testament of the said John Wenzel, deceased, and it being further stipulated that all claims for further or additional credits are matters in controversy which shall be heard and determined in connection with the said proceedings for final settlement.

"4. It is further agreed that said pending actions and proceedings shall be dismissed and withdrawn immediately and that the court costs therein shall be paid by the executor."

On September 24, 1943, the executor filed its petition for a final accounting. On December 23, 1943, Lela filed objections to the final accounting. In these objections she referred to a statement of the executor that it was entitled to credit for rent on the apartment in which she had been making her residence. She objected to that credit because she claimed an undivided interest in it under the will in addition to her homestead rights. She also objected to the executor's statement as to two parties alleged to be residuary legatees of the entire estate on the ground that this was not according to the terms of the will. She alleged that she was the owner of part of the property described and had an undivided interest in all of it under the terms of the will and that she was entitled to the ownership of part of the property because it was acquired after the will was made. She objected because the executor had not carried out the terms of the will to pay her the $10,000 provided therein. She pointed out she was unable to make the proper defense to the action of the executor because of this failure. She objected because the executor had sold some property in which she had an interest without her consent and because some of the property sold was her personal property. She further objected because the executor had not completed certain preliminary steps leading up to a final settlement and that her application to remove the executor had never been passed upon by the court. The prayer of this objection was as follows:

"Wherefore Lela E. Wenzel prays the Court to require the said executor to proceed with the terms of the said will and to pay to the widow under the terms of the will the balance due her and to account for the rents of the property belonging to the said Lela E. Wenzel and for the rents of the homestead and to account for the property belonging to the said Lela E. Wenzel and to deliver to the said Lela E. Wenzel the personal property belonging to her, and to account for the rents of the real property belonging solely to this said Lela E. Wenzel, and that this applicant and objector be given further time to object or plead to the said report and petition after the said executor has carried out the terms of the said will and the orders of this Court, and that this objector as the sole heir, surviving widow and owner of all of some of the property and part owner of all the property be permitted to file such additional objections as she may deem necessary when she has had time to properly prepare her case after the said executor has completed its duties or has been removed and a new executor or administrator with the will annexed has been appointed."

On January 12, 1944, Lela filed amended objections to the final report. In these she objected to the statement of the executor that the estate was entitled to credit for rent on the apartment in which she had been living since the death of the testator. This objection was on the ground that she was the owner of the apartment by virtue of a parol gift from decedent in his lifetime or in the alternative she was entitled to occupy it as a homestead, and that if neither of the foregoing claims were proper then that she was entitled to an undivided one-half interest by reason of the fact she was the widow of John and entitled to property under the law since she had not elected to take under the will.

She referred to the consent attached to the will but alleged that it was of no effect because it had not been approved according to law by the executor and had been abandoned by the executor and furthermore that it was invalid because it was signed by her without fully understanding it under a mistake of fact and of law and that the contents of the will were misrepresented to her by decedent and her consent was obtained through false and fraudulent representations.

She made a further allegation that by proper construction of the will she was entitled to one-half of all property of the decedent. She again objected to the statement of the executor, as to the two residuary legatees and stated that she was the owner of an undivided interest in all the property as the widow of John under the terms of the will and she was entitled to the ownership of part of the property by reason of it being property acquired by him after the will was made and she was entitled to the property in which she was then living as a homestead.

Objection was made because the executor had not carried out the terms of the will to pay her $10,000 in cash within a year; that this had prevented her making proper defense to the action; that the executor had disposed of property in which she had an interest; that he had not completed the proper preliminary steps and that her application to remove the executor had not been passed upon by the court.

She also alleged that while she might have possibly signed the alleged consent her signature was obtained through fraud, mistake and undue influence and by virtue of promises made by the decedent, which he had not carried out. She alleged further that the decedent and his agents told her the will gave her an undivided one-half

interest in all decedent's property and required the payment of $10,000 cash within a year of the probate of the will; that these statements were made by decedent for the purpose of causing her to rely upon them and she did rely upon them; that the decedent promised to transfer to her, as an inducement and for the purpose of getting her to sign the consent, certain described property; that she relied on these statements and would not have signed the consent except for them; that he did not transfer the property to her and the property is now claimed as property of the estate; that at the time she signed the consent decedent knew she was acting under this belief.

She further alleged that at the time she signed the consent she was suffering from infirmities which made her mentally incapable of understanding the character or nature of signing the consent; that no consideration passed to her for signing the instrument; that she did not discover the falsity of the representations until some time after the death of the decedent. She alleged that she had not accepted under the will and that whatever she was entitled to take from the estate she was entitled to receive as the widow. She prayed the court to cancel the consent. At the hearing in probate court the executor made a written objection to the introduction of testimony. The executor alleged that Mrs. Wenzel herself signed the petition and probated the last will of John Wenzel, and in the petition alleged it was the last will and testament, and referred to the fact that she had entered into the consent. Notice was given to all interested parties and on the date of the hearing on the petition to probate the will no one appeared to object and Mrs. Wenzel filed no written objections to the admission of the will and no evidence was offered as a basis for refusing probate of the will.

The objection also contained the following language:

"That in the nine months succeeding the date of the admission of the will to probate, no appeal as provided by G. S. 1941 Supp. 59-2404 was taken from the order admitting the will to probate. During said period the only papers filed or claims made in the Probate Court by Lela E. Wenzel were (1) petition for payment of balance of $10,000 without required full release upon such payment, filed September 15, 1942; (2) motion to set aside homestead and for accounting for all rents, obtained from apartment, filed Dec. 10th, 1942.

"This would be beyond the end of the nine months period and those two papers are not sufficient to raise the questions set out in amended objections to the final report of the executor filed January 12, 1944. The amended objections filed January 12, 1944, which is almost two years after the will was admit-

ted to probate in effect constituted a contest of the last will and testament of John Wenzel and in effect amounts to a claim against the estate of John Wenzel effecting a result contrary to the obvious intent of the testator. The objector is barred by G. S. 1941 Supp. 59-2404 and G. S. 1941 Supp. 59-2239. Under the ruling in the case of the Estate of Pennington, 158 Kansas 495, the matters contained in objections to the final report of the executor, the objections therein set out cannot be considered as a valid objection to the executor's motion for a final accounting and distribution. Under the doctrine of the Dudley case, 159 Kansas 160, the objections amounted to a collateral attack upon the judgment of the Probate Court, made March 17, 1942, admitting the will to probate."

The probate court made findings of fact and conclusions of law as follows:

"First: The Court finds that the decedent and the widow, Lela E. Wenzel, had occupied at the time of his death, as their homestead, the property described in the evidence as 325 S. Main Street, Wichita, Kansas.

"Second: The Court finds that it does not clearly appear from the will that the provisions made therein for the widow was intended to be in lieu of her homestead rights.

"Third: The Court finds that the widow did not waive her homestead rights and that her rights as to the homestead were not fully and properly explained to her at the time she signed the consent and the other instruments with respect thereto.

"Fourth: The Court further finds that the widow is entitled to her Statutory allowance of $750.00 and that her rights thereto were not fully and properly explained to her at the time she signed the consent to the will, nor was she aware of her rights thereto.

"CONCLUSIONS OF LAW

"The widow is entitled to have set aside to her the homestead known as 325 So. Main Street, Wichita, Kansas, and the sum of $750.00 as her Statutory allowance together with the $10,000 provided for her in the last will and Testament of the decedent."

Judgment was entered as follows:

"That there be set aside to the widow, Lela E. Wenzel, as a homestead, the property known as 325 So. Main Street; that there be paid to her the sum of $750.00 as a Statutory allowance, together with the sum of $10.000.00 provided for her in the Last Will and Testament of the decedent.

"IT IS FURTHER ORDERED that in all other respects the final report of the executor be and the same is hereby approved.

"IT IS FURTHER ORDERED on application of the widow that the amount of the appeal bond of Lela E. Wenzel be and the same is hereby fixed at the sum of $100.00."

On October 25, 1944, Lela appealed from so much of the order as deprived her of one-half of the estate; the executor appealed

from so much of it as set aside the homestead and the statutory allowances to her.

On the trial in the district court part of the evidence consisted of reading the record of the testimony in the probate court. Testimony of various witnesses for both parties was offered. The court made extensive findings of fact covering the execution of the various instruments, to which reference has heretofore been made. The court found that at the time the antenuptial contract was entered into Lela was represented by counsel, and that she had full knowledge of what property was owned by John and of the trust agreement. It also found that the antenuptial contract provided for Lela receiving $10,000 or at her option a monthly income of $100 per month and it provided that this was to be in lieu of any other claim she should have in the property of John; that this antenuptial contract was understandingly entered into; that Lela had been married and divorced three times before she married John, and John had been married twice and both wives had died; that following the action for divorce the postnuptial contract was executed by the parties; that at the time it was executed it was read aloud to the contracting parties and its meaning was explained to Lela and she was told in the event of John's death she was to receive the household furnishings and $10,000 and that if John's estate amounted to less than $20,000 she would receive one-half of that amount and that was in full settlement of all her claims; that she stated she would accept that in lieu of any claims she would have against John's estate. The court found that Lela entered into the contract with full knowledge of John's property and that she knew of her rights under the law; that five months after making of the postnuptial agreement John made the will to which reference has heretofore been made in this opinion; that several times before signing the consent Lela urged counsel for John to cause him to provide for her more than $10,000 cash; that counsel explained to her that the will conformed to the postnuptial agreement; that she consulted with her attorney about the consent and he stated that the will carried out the terms of the postnuptial agreement and she finally signed the consent after a full understanding of this and the facts of her rights under the law and after a consultation with her attorneys; that on the death of John she filed her petition to probate the will and called the attention of the probate court to the fact that she had signed the

consent to the will. The court found that Lela took no steps within nine months after the probating of the will to have her consent set aside, nor after the hearing did she make any objections to the probate thereof, nor to the consent; that by the provisions of the will Lela was to receive the household furnishings and $10,000 cash and that she agreed in the postnuptial agreement to accept the same; that since the death of John she had occupied an apartment in the apartment building known as the living quarters referred to in the will; that the reasonable rental value of this apartment was $45 a month; that September 15, 1942, Lela filed her petition to have paid her the sum of $10,000. Her motion to set aside the homestead and her application to remove the executor were filed December 10, 1942; that her amended objection to the final report of the executor was filed January 12, 1944; that she in addition to the household furnishings was entitled to $10,000 cash less payments previously made and less the amount of rents owing on the apartment.

The court further found that no fraud was practiced on Lela Wenzel by her husband nor by his legal representatives; that Lela acted after receiving advice and counsel from attorneys of her own choice. The court concluded as a matter of law that there was no ambiguity in the will; that the postnuptial contract, the will and consent were valid; that Lela was not entitled to one-half the estate nor to the homestead nor to the statutory allowances but was confined to her rights under the will; that she should be charged rent of $45 a month for the apartment and the executor was entitled to full possession of the building; that her claims of one-half of the estate and for statutory allowances amounted to a contest of the will and to a claim against the estate and since they were not filed within nine months were barred by the statute of nonclaim; that her claim for homestead rights was barred by her postnuptial agreement and by her consent to the last will and testament. Lela's motion to set aside the findings of fact and conclusions of law and for a new trial were overruled and judgment entered pursuant to the conclusions of law. Hence this appeal.

The appellant assigns and argues many errors. Some of them would require us to examine and consider the evidence, some of it conflicting. It will be noted that the objections filed by appellant questioned the validity of the consent only. Both the probate court and, on appeal, the district court considered evidence on and made

findings of fact on the antenuptial contract, the postnuptial contract and the consent. All the questions of fact on each of these documents were settled by the trial court adversely to the claims of appellant. She makes a vigorous argument here that there was no substantial evidence to sustain them or that in some instances they were contrary to the undisputed evidence. She further argues that since the district court read the transcript of her evidence and that of her son given in probate court, that we have the same opportunity to weigh and consider it that the district court had and we should weigh it and make different findings than those made by the district court.

There is a serious question whether we could do that since there was considerable oral testimony introduced before the district court. In view of the conclusion we have reached on other phases of the case, however, it will not be necessary for us to decide that question.

The will was admitted to probate March 17, 1942. Nine months from that date was December 17, 1942. The petition to have the $10,000 paid her without a final receipt was filed September 15, 1942, while the motion to have the homestead set aside to her was filed December 10, 1942.

These two pleadings were filed within nine months of the date of probate of the will. There was a hearing in probate court on Lela's application to have paid her the $10,000 without a final receipt. We are not favored with any statement in this record as to what the evidence was at that hearing. There was an appeal but it was never tried, probably because the stipulation into which the parties entered, to which reference has already been made, provided for the payment to Lela of $100 a month without prejudice. This much of the proceedings seems to have been of a temporary nature. At any rate, there was no statement whatever in this petition that she was making any claim otherwise than under the will. It certainly could not be construed as a contest of the will.

There was no hearing on the motion to set aside the homestead to Lela. Hearing on it was postponed under the stipulation until the hearing on the final report of the executor. There is no allegation in this motion, however, that Lela was claiming in opposition to the will.

On the appeal here Lela advances two reasons as to why this homestead should have been set aside to her. Both of them involve an interpretation of the will, not that it be stricken down. In the

first place she cites G. S. 1945 Supp. 59-404. That section reads as follows:

"The surviving spouse, by electing to take under the will of the decedent or by consenting thereto, does not waive the homestead right nor the right to such allowance, unless it clearly appears from the will that the provision therein made for such spouse was intended to be in lieu of such rights."

She then argues that it does not clearly appear from the will that the provisions of the will were intended to be in lieu of her homestead rights. This argument takes us to a consideration of the will. Paragraph three provides as follows:

"In the event my wife, Lela E. Wenzel, is living with me at the time of my death as my wife, I give and bequeath to her to be hers absolutely the household furnishings in our living quarters at that time such as furniture, rugs, bedding, pictures, bric a brac, etc.; and I further give and bequeath to her, in addition to any and all property I have heretofore given to her, a net sum equal to one-half of the net appraisal value of my estate, but not to exceed the sum of $10,000 cash."

The reference to furniture, rugs, bedding, pictures, bric-a-brac, etc., would indicate the testator had in mind the home where they were living at the time he made his will. They had never lived in a house, as that term is generally used, during their entire married life, but had always occupied an apartment in some larger apartment building. A further excerpt from item three of the will is as follows:

"In order to carry out the provisions of this paragraph the executor hereof shall have the right and duty, if necessary, to sell and dispose of so much of my estate, whether real or personal, at public or private sale and subject only to the approval of the Probate Court. If found more convenient in order to raise said funds the executor shall have the right and power to mortgage or pledge any property, either real or personal, in my estate subject only to the approval of the Probate Court. In order to carry out the purposes herein expressed the executor shall have the right and power to execute any and all necessary deeds, with or without convenants of warranty, conveyances, mortgages, assignments, bills of sale, or any and all other instruments necessary. If it is necessary to sell or mortgage any of the property of my estate hereunder, it is my desire that the executor shall consult with and take into consideration the wishes of the residuary devisees hereinafter named with reference to the individual properties to be sold or mortgaged, the terms thereof, etc.; but the executor shall not be bound thereby and shall be entitled to exercise its best judgment and discretion therein, subject only to the approval of the Probate Court."

This indicates the intent of the testator that the $10,000 payment, to which reference has been made, was all he expected his widow to receive from the estate. Otherwise the provision in which he author-

ized the executor to sell any property of his estate in order to raise the $10,000 would be meaningless.

Paragraph six of the will reads as follows:

"VI. Subject to the foregoing, I give, devise and bequeath the rest and residue of my estate whether real or personal share and share alike, to my nieces, . . ."

This residuary clause is a clear indication that he intended by his will to give away and dispose of all his estate. In construing the will, this court will adopt the familiar rule of viewing the instrument from its "four corners." If there were any ambiguity about it we would consider the surrounding facts and circumstances, such as the trust deed and the antenuptial and postnuptial contract, as well as the consent and the testimony as to the many conferences had with reference to it. We do not deem it necessary to consider these things, however, because we find no ambiguity whatever in this will. See *Burns v. Spiker*, 109 Kan. 22, 202 Pac. 370.

The other argument of Lela is that a reasonable construction of the will gives her a sum equal to one-half of the net appraisal value of the estate besides the $10,000. In support of this argument she cites the rule that a will should be liberally construed in favor of a widow and that in the absence of a clear intent to the contrary the testator is presumed to have intended that his estate should pass in accordance with the laws of descent and distribution. We find no fault with this rule. However, we have examined this will and quoted from it extensively heretofore. It appears to us clear that the testator intended that Lela should receive $10,000 if one-half of his estate amounted to that much and if it amounted to less than that, then one-half of what it did amount to, and that this with the household furniture, to which reference has been made, was all she should receive.

These conclusions dispose of the motion to set aside the homestead and to have the $10,000 paid to her without any receipt, both of which were filed within nine months of the admission of the will to probate.

In the two objections to the final order of distribution which were filed many months after the nine months period Lela attempted for the first time to avoid the effect of her consent to the will. These two pleadings ask an adjudication that would strike down the will and under many of our recent holdings were filed too late. See G. S.

1945 Supp. 59-2239, also *Foss v. Wiles,* 155 Kan. 262, 124 P. 2d 438; *Yeager v. Yeager,* 155 Kan. 734, 129 P. 2d 242; *Swisher v. Bouse,* 155 Kan. 797, 130 P. 2d 565; also *Burns v. Drake,* 157 Kan. 367, 139 P. 2d 386.

The judgment of the trial court is affirmed.