No. 44,690

Marvin J. Younger, Mildred Weyer, Paul Younger, Jr., Lorene Pfannenstiel, Carol Ann Snodgrass and Harold J. Younger, *Appellants*, v. The Estate of Paul J. Younger, Deceased, and Tom Smyth, Executor of the Estate of Paul J. Younger, Deceased, *Appellees*.

(426 P. 2d 67)

Opinion filed April 8, 1967.

J. H. *Eschmann*, of Topeka, argued the cause, and L. M. *Ascough* and *John A. Bausch*, also of Topeka, were with him on the brief for the appellants.

*Tom Smyth,* of Ness City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action to foreclose a note and mortgage executed by Paul J. Younger, deceased, to his wife, Helen Younger. The plaintiffs were bequeathed the note and mortgage by the will of their mother, Helen Younger, subject to certain benefits given to Paul J. Younger by the will during his life. The trial court held the action barred by the five-year statute of limitations, and appeal has been duly perfected.

The only question is whether the statute of limitations has run upon the note and mortgage upon which suit is brought.

The facts in this case as disclosed by the pleadings are not controverted, and the trial court determined the matter on a motion for summary judgment.

On the 25th day of February, 1958, Paul Younger gave his wife, Helen, his promissory note for $2,500 which by its written terms was due and payable in one year with interest. As security for the note he gave her a real estate mortgage on several lots in the city of Ransom, Ness County, Kansas, which was their homestead. The mortgage was duly recorded.

On the 19th day of December, 1962, Helen Younger executed her will. The only provision in her will material to this case reads as follows:

"IV

"I own a $2,500.00 promissory note of my husband, Paul, payable to me, dated February 25, 1958 and due February 25, 1959, with interest at 5% per annum, payable annually. The said note is secured by a duly recorded first mortgage on our home property located on the West Fifty (50) feet across Lots 22, 23 and 24, in Block Two (2) in the City of Ransom, Ness County, Kansas.

"I direct that my husband shall not be forced to sell said property, nor shall foreclosure proceedings be instituted by my Executor, or by my children, for the purpose of securing payment of said promissory note. However, said promissory note, if unpaid, shall be collected at such time that my husband, at his election, sells or otherwise disposes of said property. The proceeds received from said promissory note shall become a part of my general estate and distributed as part thereof. I direct further that my Executor grant my husband such extensions of time for payment of said note as he may request, or that may be advisable under the laws of Kansas, in order that all lien rights will be maintained."

The foregoing was the only provision in the will of Helen Younger

in favor of her husband, Paul, who on the 1st day of January, 1963, executed a written consent to the terms of the will of his wife, Helen, which was duly attested in the presence of two witnesses.

On the 11th day of June, 1963, Helen Younger died. Her will dated December 19, 1962, was admitted to probate in Ness County. Paul Younger, her surviving husband, did not contest the will or his consent to it.

On the 2nd day of February, 1965, Paul Younger died, and thereafter the 16th day of April, 1965, Helen's estate was finally closed.

On the 16th day of April, 1965, when Helen Younger's estate was closed, the probate court assigned all of her property to her children, who are the plaintiffs herein. The journal entry of final settlement in which her property was assigned to the children recites:

"The Court further finds that, by the terms of her will, the testator devised and bequeathed all of her property to her children, Carol Ann Snodgrass, formerly Carol Ann Younger; Lorene Pfannenstiel; Paul Younger, Jr.; Mildred Weyer; Marvin J. Younger; and Harold J. Younger in equal shares, *subject to certain provisions therein contained for her husband, Paul J. Younger during his lifetime;* that the said Paul J. Younger died on February 2, 1965, and that assignment of said property should be made on final settlement to the children of the testator above named.

"The Court further finds that the said *Paul J. Younger*, husband of the testator, *consented in writing to the said will and thereby elected to accept the provisions thereof."* (Emphasis added.)

No appeal has ever been taken from the foregoing order of final settlement in the estate of Helen Younger, deceased.

At the time this action was commenced on the 27th day of December, 1965, Paul Younger's estate was being administered in the probate court of Ness County. The estate of Paul J. Younger, deceased, and Tom Smyth, executor of his estate, were made parties defendant.

To briefly summarize for purposes of reference, the essential dates in chronological order are as follows:

February 25, 1958—Note and mortgage executed.
February 25, 1959—Due date of note and mortgage.
December 19, 1962—Will of Helen executed.
January 1, 1963—Paul consented to Helen's will.
June 11, 1963—Death of Helen.
February 25, 1964—5 years after due date February 25, 1959.
February 2, 1965—Death of Paul.
April 16, 1965—Helen's estate closed.
December 27, 1965—Suit on note and mortgage filed.

The trial court concluded the note and mortgage were barred by the five-year statute of limitations, the bar falling on the 25th day of February, 1964, pursuant to K. S. A. 60-511. Accordingly, it entered summary judgment in favor of the estate of Paul J. Younger, deceased, and his executor (defendants-appellees).

It is a fundamental rule of law that a will speaks from and takes effect on the date of the testator's death. (*In re Estate of Ellertson*, 157 Kan. 492, 142 P. 2d 724; and *In re Estate of Cline*, 170 Kan. 496, 227 P. 2d 157.)

The probate code places limitations upon the testamentary power of persons desiring to dispose of their property after death. In this connection K. S. A. 59-602 provides that either spouse may will away from the other half of his property, subject to the rights of homestead and allowances secured by statute. It further provides that, "Neither spouse shall will away from the other more than half of his property, subject to such rights and allowances, unless the other shall consent thereto in writing executed in the presence of two or more competent witnesses, or shall elect to take under the testator's will as provided by law."

Here we are not concerned with an election to take under the terms of Helen's will, but a written consent executed by Paul Younger in the presence of two competent witnesses, as provided by the foregoing section of the statute. This consent was executed on the 1st day of January, 1963, shortly after the execution of Helen's will on the 19th day of December, 1962, and long prior to the death of either Helen or Paul. The written consent of Paul reads:

"The Undersigned, PAUL J. YOUNGER, husband of HELEN MARY YOUNGER, having read and had explained to him the foregoing Last Will and Testament of HELEN MARY YOUNGER, and being well informed of the contents thereof *and the provisions made therein for his benefit, expressly consents to all of the provisions thereof, and accepts the same in lieu of the rights secured to him by statute.*" (Emphasis added.)

The foregoing consent was duly signed and dated and followed by an attestation clause bearing the signatures of two attesting witnesses.

When a will is admitted to probate, K. S. A. 59-2233 directs the court to forthwith transmit to the surviving spouse a certified copy thereof, together with a copy of K. S. A. 59-603 and 59-2233 and certify to such transmittal. This section of the statute further provides, "If such spouse has consented to the will, as provided by

law, *such consent shall control."* (Emphasis added.)

Where the consent of a spouse to the will of the other is freely, intelligently and understandingly made, the party consenting is bound by the consent and its legal sufficiency is to be determined as of the time the document evidencing consent was made. (*In re Estate of Ellis,* 168 Kan. 11, 210 P. 2d 417; and *Burns v. Spiker,* 109 Kan. 22, 202 Pac. 370.) It has even been held that where the husband consents to the wife's will he cannot later before the death of the wife revoke the consent so given. (*Chilson v. Rogers,* 91 Kan. 426, 137 Pac. 936, followed by *In re Estate of Patzner,* 173 Kan. 133, 244 P. 2d 1183.)

Relative to the consent of one spouse to the will of the other, the equitable doctrine has been announced that the one who consents and takes any beneficial interest under a will, shall not at the same time set up any right or claim of his own, even if legal and well founded, which would defeat or in any way prevent the full effect and operation of every part of the will to which the consent has been given. (*Aten v. Tobias,* 114 Kan. 646, 220 Pac. 196.)

In the opinion of *Aten v. Tobias,* supra, the court said:

"Since the evidence was insufficient to overthrow Susan's written consent to the provisions of the will made in her behalf, *that consent not only bound her but it bound all whose rights had to be claimed through her.* The wife's written consent in conformity with the statute has the same effect as the widow's election after the testator's death. (Gen. Stat. 1915, §11790; *Keeler v. Lauer,* 73 Kan. 388, 395, 396, 85 Pac. 541; *Chilson v. Rogers,* supra, 426, 430 [91 Kan. 426, 127 Pac. 936], *Erickson v. Robertson,* 116 Minn. 96; 37 L. R. A., n. s., 1133 and note). It has been held that where a husband makes a will disposing of all his property, without any provision therein for his wife, and the wife gives her consent thereto in writing, the will is valid and cannot be overthrown by the wife's descendant heirs at law. (*Hanson v. Hanson,* 81 Kan. 305, 105 Pac. 444.) Nor is there any hardship in this doctrine. The devolution of a man's property at his death is wholly a matter of statute; it is governed by legislation—the statute of wills or the statute of descents and distributions. . . ." (p. 654.) (Emphasis added.)

Turning to the facts in this case the appellants, who are heirs and legatees of Helen Younger, deceased, base their foreclosure action on the assignment of the note and mortgage to them, the provisions of Helen's will, and specifically paragraph ɪv thereof, and the consent of Paul to the will of Helen.

Insofar as the probate proceeding in Helen's estate is concerned the will was admitted to probate, the estate administered, the property distributed, and the estate was closed without a

contest or any claim ever having been asserted by Paul, who lived for more than two years after the will of Helen was admitted to probate and her estate administered. No appeal was ever taken from any order entered by the probate court in Helen's estate by either Paul or the executor in his estate. Thus, on the record here presented, the probate proceedings and the order of final settlement closing Helen's estate are *res judicata* and binding on the parties herein. (See, *In re Estate of Wenzel,* 161 Kan. 545, 170 P. 2d 618.)

At the time Helen died on June 11, 1963, the five-year statute of limitations had not run on the note and mortgage. The question then posed is: What effect, if any, did paragraph iv in Helen's will and Paul's consent to Helen's will have upon tolling the statute of limitations?

The appellants contend the will of Helen constituted a valid extension agreement of the note and mortgage, as a result of the unqualified consent of Paul, the mortgagor, to the contractual provisions of the will. We agree.

Paragraph iv of Helen's will conferred a specific benefit upon Paul. He recognized this fact in his written consent, and the trial court recognized it in the decree of final settlement. The will *directed* that Paul should not be forced to sell the property, nor that foreclosure proceedings be instituted by her executor, or by her children, for the purpose of securing the payment of said promissory note. It further provided that the promissory note, if unpaid, should be collected at such time that her husband, *at his election* "sells or otherwise disposes of said property." In that event the proceeds received from the promissory note should become a part of her estate and distributed as a part thereof. The effect of this provision was to extend the due date of the note and mortgage to such time as Paul, at his election, sold or otherwise disposed of the mortgaged property, or, if he did not dispose of it in his lifetime, the due date was extended to the date of his death.

In consideration for this benefit conferred upon Paul by the will of Helen, his wife, he in turn by giving a valid written consent relinquished his right to inherit one-half of her estate upon her death. This is good and sufficient consideration to establish a binding contract between Paul and Helen with respect to the provisions in paragraph iv of Helen's will.

For many years this court has recognized that an instrument might be testamentary in part, and contractual in part. (*Reed, Ex'r, v. Hazelton,* 37 Kan. 321, 15 Pac. 177; *Powers v. Scharling,* 64 Kan. 339, 67 Pac. 820; and *Foster v. Allen,* 159 Kan. 116, 123, 152 P. 2d 818.) The court also recognized that an instrument valid as a will may be enforced as a contract. (*Hampson v. Stanfield,* 152 Kan. 333, 103 P. 2d 910; and *In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544.)

The trial court in its memorandum opinion concluded the written consent of Paul to the terms of the will of his wife did not operate as an extension of the note and mortgage which were owned by the testatrix, and did not extend as provided by K. S. A. 60-520 (*a*) the statute of limitatations. He concluded the written consent of Paul was executed by him for an entirely different reason and purpose; that extending the statute of limitations was not considered by either the testatrix or her husband when the will and the consent were signed. The trial court continued:

"The testatrix had the right to change or revoke her will during her lifetime, and it is presumed both the testatrix and her husband knew and understood this fact. Also, the testatrix could have assigned the mortgage and note to third parties, without the husband's consent; and it is presumed that both the testatrix and her husband knew that fact also. In fact the testatrix could have cancelled the note and mortgage in favor of her husband during her lifetime. If the testatrix could have assigned the note and mortgage without her husband's consent, and did assign it, would the third party be bound by the provisions of her will merely because husband, Paul, had consented to the will? This Court thinks not. . . .

"From the will this Court notes that the testatrix further insisted that she always wanted the lien rights securing the obligation in question maintained under Kansas laws. This is evidence of knowledge by her that she knew the obligation could out-law if she did not take affirmative acts to keep it alive and that her husband's consent to her will was not sufficient alone to maintain her lien rights on this property."

The fallacy in the foregoing argument lies in the fact that a will speaks from and takes effect on the date of the testator's death. It affected all property which she owned at the time of her death. When Helen died she still owned the $2,500 promissory note and mortgage, and paragraph IV of her will then became binding and effective. At that time the consent of Paul was binding upon him and his successors in interest.

The probate court in its journal entry of final settlement in Helen's estate by appropriate findings recognized the validity of paragraph IV in Helen's will, Paul's consent to the will of Helen, and

the death of Paul. He thereupon assigned the note and mortgage to the appellants who were the legatees in Helen's will. In other words, the probate court recognized the existence of the contract extending the note and mortgage and its fulfillment in accordance with the provisions of such contract.

After Helen died, Paul, through the remainder of his life, accepted the benefits of the extension agreement as set forth in paragraph IV of Helen's will, to the detriment of Helen's estate; and the executor of Helen's estate and her children, the appellants herein, did forbear in bringing any foreclosure action on the note and mortgage to their detriment, and would, in fact, have been met by a valid defense had they brought such action, by virtue of paragraph IV in the will of Helen which was binding upon them, absent a sale of the property by Paul.

The extension agreement in Helen's will thus became an irrevocable contract between the parties, and Paul could from that time forward insist upon performance under the agreement and resist foreclosure proceedings or any action on the note, because in consenting to the will of Helen he gave valuable consideration for the agreement by giving up his right to receive his legal share in Helen's estate.

The trial court erroneously concluded an extension agreement was contrary to public policy. It is a matter of settled law that performance on any contract can be extended by mutual agreement of the parties if there is consideration for such extension agreement. (*Federal Land Bank v. Girtch*, 151 Kan. 528, 99 P. 2d 768.) It should also be recognized that K. S. A. 60-520 (*a*) expressly authorizes a renewal of the running of the statute of limitations.

The last sentence in paragraph IV of Helen's will, directing her executor to grant her husband such extensions of time for payment of the note as he may request, "*or that may be advisable*," to which the trial court made reference, is construed as having been asserted out of an abundance of caution by Helen to maintain lien rights, because she was uncertain as to the legal effect of the extension of the note and mortgage by the provisions of paragraph IV in her will.

Going one step further, the appellees in this case are estopped as a result of the *res judicata* effect of the probate proceedings in Helen's estate from asserting the statute of limitations. Paul in his lifetime accepted the benefits of the will of Helen, deceased, and in no way contested or attacked the validity of his written consent to

her will. One who accepts such benefits under a will is estopped to contest or attack its validity. (*Lanning v. Gay,* 70 Kan. 353, 78 Pac. 810; and *Weichold v. Day,* 118 Kan. 598, 236 Pac. 649.)

Kansas further recognizes the doctrine of equitable estoppel *in pais* to prevent resorting to the statute of limitations. In *Rex v. Warner,* 183 Kan. 763, 332 P. 2d 572, the court said:

". . . While this court recognizes the doctrine of equitable estoppel *in pais* to prevent a resort to the statute of limitations, and that a debtor or defendant may, by his representations, promises, or conduct, be estopped to assert the statute where other elements of estoppel are present (*H & S. Rld. Co. v. Comm'rs of Kingman Co.,* 48 Kan. 70, 28 Pac. 1078; *Railway Co. v. Pratt,* 73 Kan. 210, 85 Pac. 141; *O'Leary v. Street Railway Co.,* 87 Kan. 22, 123 Pac. 746; *Derby Oil Co. v. City of Oxford,* 134 Kan. 59, 4 P. 2d 435; *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882, 107 A. L. R. 1523; *Cole v. City of Kanopolis,* 159 Kan. 304, 153 P. 2d 920), we do not believe the facts alleged are sufficient to invoke that doctrine in the instant case. It is a legal maxim well understood that nothing can interrupt the running of the statute of limitations, and it is commonly stated without any qualification. Courts, however, have ingrafted upon such statutes an exception based upon estoppel. Generally speaking, actual fraud in the technical sense, bad faith, or an attempt to mislead or deceive is not essential to create such an estoppel; to invoke the doctrine, the debtor or defendant must have done something that amounted to an affirmative inducement to plaintiff to delay bringing the action. (*Railway Co. v. Pratt,* supra; *Pessemier v. Zeller,* supra; *Cole v. City of Kanopolis,* supra; 53 C. J. S., Limitations of Actions, § 25, p. 966; 34 Am. Jur., Limitations of Actions, § 412, p. 324.)" (pp. 770, 771.)

The law of estoppel operates only on parties to the transaction out of which it arises and on their privies. (*Sutton v. Frazier,* 183 Kan, 33, 325 P. 2d 338; and *Potwin State Bank v. Ward,* 183 Kan. 475, 327 P. 2d 1091, 80 A. L. R. 2d 166.)

We hold upon the facts in this case a good and valid contract extending the note and mortgage bound the parties upon the date of Helen's death, prior to the expiration of the five-year statute of limitations, and thereby extended the period of limitations five years from the date upon which the note and mortgage became due, upon Paul's death. This action having been commenced within one year after Paul's death, it is not barred by the statute of limitations. Further, the appellees who are in privity with Paul, who accepted the benefits of Helen's will, and the contract, are estopped from asserting the statute of limitations.

The judgment of the lower court is reversed with directions to grant judgment on the note and foreclose the mortgage on the real property in question.