## No. 36,608

SAM MEDFORD, *Appellee*, v. THE BOARD OF TRUSTEES OF PARK COLLEGE, *Appellant*.

(175 P. 2d 95)

Opinion filed December 7, 1946.

*Frank E. Tyler*, of Kansas City, Mo., argued the cause, and *E. H. Benson*, of Colby, and *R. E. Draper*, of Kansas City, Mo., were with him on the briefs for the appellant; *Edgar C. Ellis* and *Roy K. Dietrich*, both of Kansas City, Mo., of counsel.

*E. F. Beckner* and *Leon N. Roulier*, both of Colby, were on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: This appeal necessitates a construction of our statute requiring that when the title to minerals is severed from the fee to the surface, the mineral rights shall be valued and listed separately from the fee of such land and that the land itself and the right to the minerals shall be separately taxed to the respective owners thereof. The involved statute (G. S. 1935, 79-420), will be set forth subsequently herein. The precise question to be considered is whether a *grantor* must list the mineral rights separately for taxation in the event the grantee fails to record a deed, in which the grantor excepted and reserved the mineral interests, within ninety days after its execution. The trial court held that it was incumbent upon the grantor to record or list for taxation the reserved or excepted oil, gas and mineral rights and that the failure to do so within the statutory period resulted in the grantor having conveyed full fee title to the grantee and that his successor in interest obtained such title. The stipulated and otherwise admitted facts follow.

During the month of July, 1944, the trustees of Park College executed a warranty deed to Charlie J. Kallman covering the land in controversy. For some reason, not now material, the deed was placed in escrow on July 31, 1944. The escrow holder delivered the deed to Kallman on or about August 21, 1944. It contained the following provision:

"Party of the first part excepts and reserves all oil, gas and all other minerals for the benefit of itself, its successors and assigns, with the right at all times to prospect for, mine, extract and remove same from the land by any and all methods; . . ."

Nothing more was done by Park College or by Kallman which affected the title to any part of the property until on or about March 6, 1945, when Kallman executed a quitclaim deed covering the land to the appellee, Sam Medford. On March 15, Medford caused to be filed for record the warranty deed from Park College to Kallman and also the quitclaim deed from Kallman to Medford. On June 22, 1945, Medford filed an action to quiet title to the involved land. In his petition it was alleged that the exception or reservation hereinbefore set forth amounted to a severance of the minerals from the land and that because of the failure to record the severance within the ninety days or to list the same

for taxation the exception or reservation became absolutely void and that Medford was, therefore, entitled to have his title quieted and be declared the sole and unconditional owner of the entire fee title in and to the land described in the deed. The amended answer filed by Park College set forth that the deed to Kallman conveyed to him only the surface rights; that Kallman had sole possession of the deed at all times subsequent to its delivery by the escrow holder and that, therefore, Kallman could have at any time thereafter filed the deed for record; that any delay in filing the same was chargeable exclusively to Kallman or his assigns; that Kallman and his successor in interest are not entitled to derive any benefit to the prejudice of Park College from the delay in filing the deed for record; that Kallman is estopped from asserting any interest in the oil, gas or minerals under the described real estate; that Medford did not acquire any interest in the same; that Park College owns all of the oil, gas or mineral rights; that if the involved statute purports to forfeit, invalidate or otherwise deprive Park College of its title to the oil, gas or minerals under the described real estate, the same is unconstitutional and void in that Park College would thereby be deprived of its property without just compensation and without due process of law and would be denied equal protection of the laws. In its answer Park College also alleged that the failure to record the deed to Kallman within the ninety-day period in compliance with the statute resulted in the entire deed being void and that Park College should be decreed to be the sole owner and entitled to the immediate possession of the real estate. Medford's reply consisted of a general denial. The case was tried to the court upon the issues joined by the pleadings and upon the stipulation of facts which, in addition to the foregoing, set forth that there had been no separate listing of or offer to list for taxation the mineral estate by Park College for the taxable years 1944 and 1945; that Park College acquired complete fee title to the real estate in 1939 and that the deed showing such title in Park College was recorded on June 13, 1939. It was further stipulated that there had been no production of oil, gas or other valuable minerals from land within a radius of twenty miles of the land in controversy and that it was the policy of Park College to insert in all of its deeds of farm land a similar reservation of the oil, gas and valuable mineral rights. The trial court found that the quoted exception or reservation in the deed was equivalent

to a severance of the oil, gas and other minerals in place and that the reservation was null and void because it was not recorded within ninety days or listed for taxation in accordance with the statute and adjudged that Medford was the owner in fee simple of the real estate and further that Park College and all parties claiming as its successors in interest, should be barred from asserting any interest in the property. A motion for a new trial was overruled and appeal followed.

The orbit of the action is around our statute, G. S. 1935, 79-420, *supra*, which reads:

"That where the fee to the surface of any tract, parcel or lot of land is in any person or persons, natural or artificial, and the right or title to any minerals therein is in another or in others, the right to such minerals shall be valued and listed separately from the fee of said land, in separate entries and descriptions, and such land itself and said right to the minerals therein shall be separately taxed to the owners thereof respectively. The register of deeds shall furnish to the county clerk, who shall furnish on the first day of March each year to each assessor where such mineral reserves exist and are a matter of record, a certified description of all such reserves: *Provided,* That when such reserves or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation."

Counsel for Park College contend that the statute should not apply where the mineral rights are excepted from or reserved in a deed conveying only the surface rights. Counsel for Medford assert that this court definitely has held to the contrary in the case of *Johnson v. Johnson,* 150 Kan. 541, 95 P. 2d 329. In the cited case the record title owner of real estate conveyed the same by a deed which reserved all the oil, gas and other minerals in the land. The deed was recorded in a few days. Consequently, no controversy arose by reason of the failure to record the deed within the ninety days after its execution. The question for decision in the case was whether such a recording of the deed was a sufficient, separate listing for taxation of the mineral interests so that it was unnecessary for subsequent purchasers or holders of the mineral interests also to record the instruments conveying the mineral interests to them within ninety days or otherwise list them for separate taxation. The holding was to the effect that the subsequent conveyances of the mineral interests were of no importance since a severance of the mineral rights from the title to the surface was made by the original conveyance, which had been recorded in compliance with the statute. In other words, we held that where a severance of the

mineral interests has been made and recording thereof has followed in compliance with the statute that it is not necessary thereafter to record or list separately for taxation other conveyances of integral interests in and to the mineral rights. As before stated, since there had been a compliance in the cited case with the statute in connection with the recording of the original deed, no question actually arose in the case which necessitated a decision determining whether the failure to record or list for taxation a reservation or an exception by the grantor of mineral interests resulted in the reservation or exception becoming void. Therefore, the question before us in the instant case was not settled or determined by the decision in *Johnson v. Johnson*, supra. In justice to the trial court, however, it must be said that much of the *dicta* in the opinion sustains the conclusion reached by the trial court in the instant case. *Dictum* often develops in opinions from comments upon arguments advanced by counsel for the respective parties. *Dicta* and *obiter dicta* which go beyond the case may be respected but should not control a judgment in a subsequent case when the precise point is presented, argued and considered by the entire court. (See *Express Co. v. Foley*, 46 Kan. 457, at 464, 26 Pac. 665.) Nobody is bound by. *dictum* (*State v. Mercantile Co.*, 103 Kan. 896, 176 Pac. 670), "not even . . . the court itself when it may be further enlightened by briefs and arguments of counsel and mature consideration and when it becomes a question squarely presented for decision." (*Putnam v. City of Salina*, 137 Kan. 731, at 733, 22 P. 2d 957). See, also, *Burke v. State Board of Canvassers*, 152 Kan. 826, at 836, 107 P. 2d 773. Moreover, none of the cases cited in *Johnson v. Johnson*, supra, pass upon or consider the exact question presented by this appeal. Insofar as the briefs and our research have disclosed, the question now presented is one of first impression in this court. As a result we are required again to give consideration to the confusing, confounding, perplexing language found in the statute in an effort to determine whether it was the intent of the legislature to require a grantor, who did not convey but who excepted mineral rights from a conveyance, to record the instrument of conveyance within ninety days or otherwise list the mineral interests for taxation.

The statute originally was enacted in 1897. It contained the present provision reading as follows: "That when such *reserves* or leases are not recorded within ninety days after execution, they shall become void if not listed for taxation." (Emphasis supplied.)

Subsequent to the enactment of the statute this court held, in January, 1905, that an exception or reservation in a deed, reading very similar to the one involved in the instant case, constituted an exception and not a reservation. From the case of *Barrett v. Coal Co.*, 70 Kan. 649, 79 Pac. 150, the first syllabus is quoted as follows:

"A deed to real estate contained the following provision: 'This deed is made subject to the following exceptions, reservations, and conditions, to-wit: . . . The said party of the first part hereby reserves the coal and all other mineral underlying said land.' *Held*, that this constituted an exception, not a reservation. The title to the coal remained in the grantor; not a mere easement to go upon the land to mine it."

Again, in November of the same year, to wit, 1905, this court in *Moore v. Griffin*, 72 Kan. 164, 83 Pac. 395, construed a similar designated reservation in a deed as an exception as distinguished from a true reservation. In addition, later this court in March, 1907, called attention to the inadequate and inaccurate language of the statute in the opinion written in the case of *Gas Co. v. Neosho County*, 75 Kan. 335, 89 Pac. 750, from which the following is quoted:

"The confusion of thought and inaccuracy of expression so frequently exhibited in legislative enactments are quite apparent in this one, and the precise purpose to be accomplished is somewhat difficult of discernment." (p. 337.)

Notwithstanding the admonitions on the part of this court in the cited cases and also in others, the legislature, in 1911, reënacted the statute without changing its wording in any respect. Consequently, it is very difficult to conclude that the legislature in 1911 intended that the word "reserves" used in the statute should be construed by the courts to include "exceptions." Apparently the legislature was satisfied not to include within the operation of the statute conveyances which contained exceptions of the mineral rights regardless of whether they were designated as reservations or exceptions.

Perhaps, however, it may be properly asserted that because the modern tendency of courts has been to brush aside fine distinctions and look to the character and effect of the provision, the legislature intended that the word "reserves" should be construed to include all exceptions. Such a conclusion is hardly warranted in view of the warning given the legislature by our decisions but possibly it is sufficient to necessitate further analysis of the statute in order to determine the legislative intent. Shortly before the reënactment of the statute in 1911 this court, in July, 1910, filed its opinion in

the case of *Gas Co. v. Oil Co.*, 83 Kan. 136, 109 Pac. 1002, which considered the effect of the statute and in substance stated that it was the duty of the *owner* of the *instrument* which *conveyed the property* to record it within the time specified by the statute and also to see that it was listed for taxation in the proper time. Thus the statute was construed as applying to conveyances rather than to reservations or exceptions. Although the distinction was not emphasized in the opinion, such case, when considered with our prior decisions, should have prompted the legislature to change the statute if it so desired.

It should be noted that the deed involved in the instant case did not convey any interest in and to the minerals to the grantee. The legal effect of a true exception in a deed is the same as if no conveyance had been made of the property excepted from the deed. As a result, the mineral interests, together with the surface interests, remained listed for taxation as an entirety in the name of the grantor until such time as the grantee saw fit to record the deed. The theory has been often expressed in our own and other decisions that assessors, in fixing the valuation of land, take into consideration the value of all parts of the real estate and all improvements thereon for all purposes. It was said in *Richards v. Shearer*, 145 Kan. 88, at 93, 64 P. 2d 56, that "the entire tax would properly have been assessed against the property of the grantor." Thus the grantor in the present case was in no different position, from the standpoint of taxation, than he would have been if he had conveyed a described portion of the fee of the property in its entirety to the grantee and the grantee had failed to record the instrument. This court has recognized again and again that fractions of land located in Kansas can be conveyed either vertically or horizontally. If an owner of the fee conveys to another any part thereof, the title to the part not conveyed remains vested in the owner, and if any inequality results from the failure of the grantee to record the conveyance for tax purposes, the original fee owner can pay the taxes upon the entire property, under protest, and apply to the county board of equalization for a rebate, as was stated in *Mining Co. v. Crawford County*, 71 Kan. 276, at 278, 80 Pac. 601, which case was cited with approval in *Hushaw v. Kansas Farmers Union Royalty Co.*, 149 Kan. 64, 86 P. 2d 559. The legislature has not seen fit to enact any clear exception in case a farmer or other landowner sells a part or all of the minerals under his land. Therefore, a presumption arises that the legislature has

not desired to do so, and we are of the opinion that the statute under consideration does not require such a construction.

In the cited case of *Hushaw v. Kansas Farmers Union Royalty Co.*, supra, the opinion, in considering the constitutionality of the statute here involved, set forth that "Manifestly this is not the forfeiture of a *vested* title, but a condition precedent to the vesting of title in the *transferee*. This was the construction of the statute as given in *Gas Co. v. Oil Co.*, supra, and we adhere to the view there expressed." (p. 74.)   (Emphasis supplied.)   The case before us presents an instance wherein the title to the mineral interests has not been transferred but has been and remained vested at all times in the grantor.

We are not now departing from our decisions which hold that a severance of the mineral interests can be effected within the purview of the statute by a reservation or exception of the mineral interests in an instrument of conveyance in such manner that thereafter the mineral interests and the surface rights can and should be separately listed for taxation.   It is not necessary for us to disrupt or set aside our decisions to such effect in reaching our conclusion that it was not the intent of the legislature to require vested interests to be recorded a second time or separately listed by the grantors for taxation in the event all or any part of the surface rights only were conveyed.   The statute does not provide that a conveyance of the surface rights must be recorded within a designated time or separately listed for taxation.

To hold that the legislature intended that grantors excepting mineral rights from conveyances or conveying mineral interests should record the conveyances and separately list the interests for taxation would result in a ridiculous and impractical construction of the statute.   Our decisions uniformly hold that where the involved instrument creates a present vested interest in the minerals in place as distinguished from a mere lease which is in the nature of a license to enter and explore, the grantee must record the conveyance of the mineral interests or separately list the mineral interests for taxation in compliance with the statute but we have never held that the legislature contemplated that a grantor named in such an instrument must also see that it is recorded or that the mineral interests are separately listed for taxation.   What is the result if we so hold? For the purpose of illustration, let it be assumed that a grantor con-

veys to another an undivided one-half interest in and to the oil, gas and other mineral rights, as frequently happens. Add to the assumption the fact that the grantee does not record the instrument or separately list the interest for taxation, as contemplated by the statute. As a result the conveyance to the grantee becomes void by reason of the operation of the statute and in the event the fee owner brings an action for such a purpose, a forfeiture of the conveyed mineral interests will be decreed and the instrument creating them will become a nullity for all purposes under our decisions. Suppose, however, that the named grantee asserts in the same action that the grantor failed to record or list for taxation the undivided one-half interest in and to the mineral rights which he retained, reserved or excepted, would this court hold in such circumstances that the grantor had forfeited his one-half interest in the mineral rights and that the grantee likewise had forfeited the other one-half interest which had been conveyed to him? If so, who would own the mineral interests and in what proportions? If each forfeited to the other in such a case, neither would have to comply with the statute in order to obtain a half interest in the minerals. But what would be the result if the mineral interests had been transferred in unequal proportions? Surely, the legislature never intended that such uncontemplated, complicated consequences should result from a legal construction of the statutory language. We hold that a *grantor* retaining by, or excepting from, a conveyance, a vested and recorded title to any minerals is not required to record the instrument executed by him within ninety days after its execution or to list separately such mineral interests for taxation under and by reason of G. S. 1935, 79-420.

The foregoing conclusion makes it unnecessary for us to consider the constitutional and other questions raised by the answer filed in behalf of Park College. We are unable to agree with the contention asserted in such answer that the failure of the grantee to record the deed to the surface of the land resulted in such instrument being void in its entirety. As hereinbefore stated, we do not have a statute which requires a deed conveying surface rights only to be recorded by the grantor within a specified period. Neither do we have one which requires a grantee to do so.

The judgment of the district court is reversed and the cause is remanded with instructions to quiet the title to the surface of the

land in Sam Medford and the title to all oil, gas and other minerals in the board of trustees of Park College, and also the title to such incidental rights as are set forth in the exception clause of the involved deed.

HARVEY, C. J., dissents.